IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Petitioner,<br><br> vs.<br><br>ALLEN H. SAKAI, as President of STRATEGIC MEDICAL CONSULTING, INC., ALLEN H. SAKAI, ROBERT R. LAI, and SUSAN C. SAKAI,<br><br>    Respondents. | CIVIL NO. 11-00217 LEK-RLP (Consolidated with CIVIL NOS. 11-00218, -219, & -220 LEK-RLP)<br><br>FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART THE UNITED STATES' PETITION TO ENFORCE IRS SUMMONSES |

FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART THE
UNITED STATES' PETITION TO ENFORCE IRS SUMMONSES[1]

Before the Court, pursuant to a designation by United

States District Judge Leslie E. Kobayashi, is Petitioner United

States of America's ("Petitioner" or the "United States")

Petition to Enforce IRS Summonses ("Petition"), filed on April 5,

2011.  Respondents Allen H. Sakai, as President of Strategic

Medical Consulting, Inc. ("Allen Sakai President"), Allen H.

---

[1] Within seventeen (17) days after a party is served with a copy of the Findings and Recommendation, that party may, pursuant to 28 U.S.C. § 636(b)(1)(B), LR 74.2 of the Local Rules of Practice for the United States District Court for the District of Hawaii, and Rule 6(d) of the Federal Rules of Civil Procedure, file written objections in the United States District Court.  A party must file any objections within the seventeen-day period allowed if that party wants to have appellate review of the Findings and Recommendation.  If no objections are filed, no appellate review will be allowed.

Sakai ("Allen Sakai"), Robert R. Lai ("Lai"), and Susan C. Sakai ("Susan Sakai") (collectively "Respondents") filed their Opposition on May 24, 2011, and Petitioner filed its Reply on June 1, 2011.

On April 7, 2011, the Court issued four separate Orders to Show Cause ("OSC") why Respondents should not be compelled to obey the Internal Revenue Service ("IRS") summonses served upon them.[2]  The matter came on for hearing before the Court on June 7, 2011 at 10:00 a.m.  Rick Watson, Esq. appeared on behalf of Petitioner, and Edward M. Robbins, Esq. and Howard T. Chang, Esq. appeared on behalf of Respondents.  Based on the following, and after careful consideration of the Petition, the supporting and opposing memoranda, declarations and exhibits, and the record established in this action, the Court FINDS AND RECOMMENDS that the United States' Petition be GRANTED IN PART AND DENIED IN PART.

BACKGROUND

This action arises out of an audit initiated by the State of Hawaii on August 6, 2007 regarding the state income tax returns filed jointly by Allen Sakai and Susan Sakai (collectively the "Sakais") for the taxable years of 2003 through

---

[2] The United States originally brought petitions to enforce IRS summonses against each individual respondent in four separate actions, Civil Nos. 11-00217 (Allen Sakai President), -218 (Allen Sakai), -219 (Lai), and -220 (Susan Sakai) LEK-RLP.  On April 22, 2011, the cases were consolidated into the instant action.  See dkt. no. 6.

2005.  On August 21, 2007, the state auditor requested the Sakais provide complete copies of their federal income tax returns for the 2002 to 2006 taxable years.  Legal counsel for the Sakais retained Lai, a Certified Public Accountant (CPA), to assist with this audit.  On October 12, 2007, the Sakais filed amended federal income tax returns for the 2003 to 2005 taxable years, which were prepared by Lai.

On January 29, 2009, IRS Revenue Agent Stephen Nomura began an audit of the Sakais' 2005 federal income tax return.  On February 17, 2009, Agent Nomura sent the Sakais an Information Document Request, which requested information concerning the Sakais' Schedule C claims.  Subsequently, communications regarding this issue occurred between Agent Nomura and Lai as well as the Sakais' legal counsel, Charles P. Rettig.  On April 15, 2009, Agent Nomura advised Mr. Rettig that he needed to interview the Sakais to "verify whether Forms 1099 should have been issued."  See Declaration of Charles P. Rettig ("Rettig Decl.") ¶ 9; Reply at 4.

On July 9, 2009, Agent Nomura determined that the Sakais' 2005 federal income tax return "warrants possible assertion of civil fraud penalty."  See Exh. 6 to Opposition.  On September 3, 2009, in response to an inquiry Mr. Rettig, Agent Nomura disclosed the IRS' consideration of a civil fraud penalty for the Sakais.  On that same day, prior to receiving Mr. Rettig's inquiry, Agent Nomura's supervisor suggested that the

3

Sakais' audit be expanded to include the 2003 and 2004 taxable years.  On September 4, 2009, counsel for the Sakais submitted a Freedom of Information Act (FOIA) request to the IRS Disclosure Office, seeking all documents relating to their investigation of the Sakais.  The IRS responded to the FOIA request on September 30, 2009, but the 475 pages of documents did not reference Forms 1099.  See Rettig Decl. ¶ 12.

On April 6, 2010, the IRS notified the Sakais that it was expanding the audit to include the 2003 and 2004 taxable years.  Following an April 8, 2010 letter from the Sakais' counsel alleging impropriety relating to the purpose of the IRS' investigation of the Sakais, the matter was reassigned to IRS Revenue Agent Debra Tsuha.

On June 16, 2010, the IRS issued administrative summonses to (1) Allen Sakai President, (2) Allen Sakai, and (3) Susan Sakai.  On June 24, 2010, the IRS issued a similar summons to Lai.  The summonses directed Respondents to appear before Agent Tsuha to give testimony and produce for examination the books, records, papers, and other data relevant to the tax liabilities of the Sakais and Strategic Medical Consulting, Inc. ("Strategic Medical") for the taxable years of 2003 through 2005.

On July 23, 2010, Allen Sakai, in his individual and corporate capacities, and Susan Sakai appeared in response to the IRS summonses but failed to produce any of the documents described therein.  Further, the Sakais refused to answer

4

questions related to the information covered by the summons, choosing instead to invoke their Fifth Amendment privilege against self-incrimination. On July 28, 2010, Lai appeared in response to the IRS summons, produced the amended returns he prepared on behalf of the Sakais and some other documents, but also refused to answer questions in connection to the summons based on an assertion that the information was protected by the attorney-client privilege and work product doctrine. The IRS has some of the documents described in the summonses in its possession but seeks the remaining information through the instant Petition.

<u>ANALYSIS</u>

**A. Enforcement of the IRS Summonses[3]**

**1. Legal Standard**

Pursuant to 26 U.S.C. § 7602, the IRS is permitted to determine a person's tax liability by (1) examining the person's documents, (2) issuing summons, or (3) taking the person's testimony. These grants of power are to be "liberally construed

---

[3] Respondents assert that the United States could compel the testimony and production of records from the Sakais by seeking a court order granting immunity pursuant to 18 U.S.C. §§ 6002 and 6004. <u>See</u> Opposition at 13. While the Court agrees that the United States *could have* utilized these statutes in such a manner, the United States was in no way bound to do so. Indeed, Respondents do not argue that the United States was required to seek a court order rather than issuing IRS summonses as it did here. Therefore, the Court finds that these statutes are irrelevant and immaterial to the determination of the instant Petition.

in recognition of the vital public purposes which they serve," and the restriction contained in 26 U.S.C. § 7605(b) regarding unnecessary examinations or investigations is "not to be read so broadly as to defeat them. <u>De Masters v. Arend</u>, 313 F.2d 79, 87 (9th Cir. 1963). <u>See also</u> <u>Speck v. United States</u>, 59 F.3d 106, 108 (9th Cir. 1995) (citing <u>United States v. Arthur Young & Co.</u>, 465 U.S. 805, 816 (1984) (stating that Congress has granted the IRS "expansive information-gathering authority")). The use of the words "may be relevant or material" in the statute "reflects Congress' express intention to allow the IRS to obtain items of even *potential* relevance to an ongoing investigation." <u>United States v. Arthur Young & Co.</u>, 465 U.S. 805, 815-16 (1984) (emphasis in original). However, while "minimal," the IRS' burden is not "non-existent": in order to meet the required showing that the summons "might throw light upon the correctness of the return," the IRS must demonstrate "in particular circumstances an indication of a realistic expectation rather than an idle hope that something may be discovered." <u>David H. Tedder & Assocs., Inc. v. United States</u>, 77 F.3d 1166, 1168-69 (9th Cir. 1996).[4]

---

[4] The Ninth Circuit has explained that the "realistic expectation rather than an idle hope" test is essentially the same as the "might have thrown light upon" test. <u>See</u> <u>David H. Tedder</u>, 77 F.3d at 1169 (quoting <u>La Mura v. United States</u>, 765 F.2d 974, 981 (9th Cir. 1985)).

In order to obtain enforcement of an IRS summons, the United States need only make a prima facie showing of good faith in the issuance of the summons. See Lidas, Inc. v. United States, 238 F.3d 1076, 1081-82 (9th Cir. 2001) (citing United States v. Powell, 379 U.S. 48, 57-58 (1964)). The United States must show that: (1) the investigation will be conducted for a legitimate purpose; (2) the inquiry will be relevant to such purpose; (3); the information sought is not already within the IRS' possession; and (4) the administrative steps required by the Internal Revenue Code have been followed. Id. at 1082 (citing Powell, 379 U.S. at 57-58). The United States' burden of satisfying the Powell requirements is a "slight one" that can be met merely be presenting the sworn affidavit of the agent who issued the summons attesting to these facts. United States v. Dynavac, Inc., 6 F.3d 1407, 1414 (9th Cir. 1993).

Once the United States establishes a prima facie case for enforcement of the IRS summons under Powell, the burden shifts to the taxpayer, who "may challenge the summons on any appropriate ground," including failure to meet the Powell requirements. Lidas, Inc., 238 F.3d at 1082 (citing United States v. Jose, 131 F.3d 1325, 1328 (9th Cir. 1997)). Under this standard, the taxpayer bears a "heavy burden" to rebut the presumption of good faith. Id. This burden leaves the taxpayer with few defenses. United States v. Derr, 968 F.2d 943, 945 (9th Cir. 1992). Indeed, the taxpayer must allege "specific facts and

7

evidence to support his allegations of bad faith or improper purpose." <u>Crystal v. United States</u>, 172 F.3d 1141, 1144 (9th Cir. 1999) (quoting <u>Jose</u>, 131 F.3d at 1328); <u>Fortney v. United States</u>, 59 F.3d 117, 120 (9th Cir. 1995) (once a prima facie case is made, the taxpayer must show an "abuse of process" or "the lack of institutional good faith").  If, by such facts and evidence, the taxpayer is able to raise sufficient doubt about the IRS' motive for issuing the summons, the district court must hold a "limited evidentiary hearing" to determine whether further inquiry into the IRS' purposes by way of discovery is warranted. <u>United States v. Tanoue</u>, 94 F.3d 1342, 1346 (9th Cir. 1996).

**2.    The United States Has Established a Prima Facie Case**

In the present case, United States District Judge Leslie E. Kobayashi already determined that Petitioner made a prima facie showing of good faith in the issuance of the summons when she issued the OSC.  Specifically, the OSC stated that Petitioner made a prima facie showing that: (1) the investigation is being conducted for a legitimate purpose; (2) the inquiries may be relevant to that purpose; (2) the information sought is not already within the IRS' possession; and (4) the administrative steps required by the Internal Revenue Code have been followed.  <u>See</u> dkt. no. 4 at 2-3.

Moreover, the Petitioner submitted the declaration of IRS Revenue Agent Tsuha in support of its Petition.  Courts have

consistently recognized that declarations or affidavits by IRS
directors or agents generally satisfy the <u>Powell</u> requirements.
<u>Lidas, Inc.</u>, 238 F.3d at 1082 (citing <u>United States v. Stuart</u>,
489 U.S. 353, 360-61 (1989); <u>Barquero v. United States</u>, 18 F.3d
1311, 1317 (5th Cir. 1994)).  Indeed, the Ninth Circuit has held
that affidavits similar to Agent Tsuha's declaration in the
present matter establish the United States' prima facie case
under <u>Powell</u>.  <u>See e.g.</u>, <u>id.</u>  Therefore, Agent Tsuha's
declaration plainly satisfies the requirements of good faith set
forth by the United States Supreme Court in <u>Powell</u> and which the
Ninth Circuit has repeatedly affirmed.  <u>Id.</u>

>    **3.  Respondents Have Not Proven Bad Faith or Improper
>         Purpose**
>
>    **a.  Agent Nomura's Conduct Does Not Constitute Bad
>         Faith**

The purpose of the good-faith inquiry is to determine
whether the IRS is "honestly pursuing the goals of [26 U.S.C.]
7602 by issuing the summons."  <u>United States v. LaSalle Nat'l
Bank</u>, 437 U.S. 298, 316 (1978).  To this end, the "institutional
posture" of the IRS must be examined; the personal intent of a
single agent, while relevant, is not dispositive.  <u>Id.</u>

In this case, Respondents claim that the IRS engaged in
bad faith when Agent Nomura advised Mr. Rettig that he needed to
interview the Sakais to "verify whether Forms 1099 should have
been issued" in an April 9, 2009 voicemail message.  Respondents

argue that Agent Nomura's statement constitutes an "affirmative misrepresentation" made for the purpose of inducing the Sakais to agree to be interviewed. See Opposition at 14. Respondents contend that Agent Nomura should have remained silent, changed the topic, or told the truth, i.e., that the IRS was considering pursuing a civil fraud penalty against the Sakais, because his statement amounts to "fraud and deceit on the part of the government." See id. (citing Groder v. United States, 816 F.2d 139, 144 (4th Cir. 1987)).

However, the Ninth Circuit, in interpreting Groder, emphasized that bad faith is "not simply an agent acting unreasonably or unsatisfactorily." Crystal v. United States, 172 F.3d 1141, 1149 (9th Cir. 1999); see also Groder, 816 F.2d at 145 (rejecting taxpayer's attempt to introduce a "reasonable agent" standard into the bad faith inquiry). Indeed, even if the motivation of an individual IRS agent is suspect, the summons may nevertheless be enforced absent a showing that the improper motivation somehow "infected the institutional posture of the IRS." Crystal, 172 F.3d at 1150 (quoting 2121 Arlington Heights Corp. v IRS, 109 F.3d 1221, 1226 (7th Cir. 1997)).

Here, there is no evidence that Agent Nomura's statement was motivated by an illegitimate purpose or was affirmatively misleading as to the potential consequences of the IRS' audit. In the first place, as soon as the Sakais received

the IDR from Agent Nomura on February 17, 2009, the Sakais and their legal counsel were on notice that a civil fraud penalty could be imposed if improprieties were found in their 2005 federal income tax return. Further, the record clearly shows that Agent Nomura did not make the determination that the Sakais should be examined for potential fraud until July 9, 2009, three months *after* the voicemail message was left. <u>See</u> Exh. 6 to Opposition at 2. Moreover, when Agent Nomura was asked directly by the Sakais' counsel about the possible penalties the IRS was considering, Agent Nomura immediately responded that the IRS was considering a civil fraud penalty. <u>See</u> Exh. 3 to Opposition at 1-2.

In addition, even if Agent Nomura's conduct was suspect, there is no evidence in the record that it somehow infected the institutional posture of the IRS. In fact, once the neutrality of Agent Nomura was called into question by the Sakais' counsel, the IRS promptly reassigned the case to Agent Tsuha. <u>See</u> Rettig Decl. ¶ 16.

Finally, even if it was assumed that Agent Nomura's statement was false and misleading, Respondents did not suffer any harm as a result. Unlike the taxpayers in <u>Crystal</u>, Respondents did not voluntarily disclose any information in detrimental reliance upon an agent's statement. Rather, in the present case, Respondents flatly refused to turn over any

documents or answer any questions other than their name, current address, and cell phone number in response to the instant summonses.  For these reasons, the Court finds that Respondents have failed to allege specific facts of bad faith to invalidate the summonses.

>    **b.    The IRS' Investigation Into Violations For Which the Ordinary Statute of Limitations Has Expired Does Not Constitute an Improper Purpose**

Respondents also claim that the IRS' expansion of the Sakais' audit on April 6, 2010 to include the 2003 and 2004 taxable years constituted an improper purpose because the ordinary statute of limitations for civil tax violations expired three years after the return was filed.  See 26 U.S.C. § 6501(a). Respondents further state that "[w]hen the IRS was confronted with their false and misleading statement, it subsequently notified the taxpayers that the IRS was expanding the audit to include two (2) years that were at the time closed by the normal civil three (3) year statute of limitations."  See Opposition at 15.

As an initial matter, it does not appear that the IRS expanded the audit after being confronted with allegations of impropriety regarding Agent Nomura's voicemail message.  On September 3, 2009, *prior* to Respondents' FOIA request and other correspondence to the IRS, Agent Nomura's supervisor suggested that the audit be expanded.  See Exh. 13 to Opposition.

Notwithstanding this fact, federal courts have uniformly held that a taxpayer's burden overcome enforcement of an IRS summons is not met simply by a showing that ordinary statute of limitations has run.  See e.g., Powell, 379 U.S. at 58 ("The burden of showing an abuse of the court's process is on the taxpayer, and it is not met by a mere showing . . . that the statute of limitations for ordinary deficiencies has run . . ."); United States v. Will, 671 F.2d 963, 967 (6th Cir. 1982); United States v. Kis, 658 F.2d 526, 543 (7th Cir. 1981).  As other circuits have pointed out, under 26 U.S.C. § 6501(e), the ordinary three-year statute of limitations could be extended to six years when there is a substantial understatement of income. See, e.g., id. at 543.  Therefore, the Court finds that Respondents have failed to allege specific facts of improper purpose to invalidate the summonses.

**B.    Privileges Claimed By Respondents in Refusing to Testify**

Through 26 U.S.C. § 7602, Congress has imposed a duty on persons possessing information "relevant or material" to an investigation of federal tax liability to produce that information to the IRS.  United States v. Euge, 444 U.S. 707, 712 (1980).  This duty obligates the person summoned to produce documentary evidence and to appear and give testimony, subject to the "traditional privileges and limitations."  Id. at 714.  The taxpayer bears the burden of showing that testimony or documents

are privileged.  <u>United States v. Bright</u>, 596 F.3d 683, 691 (9th Cir. 2010).

**1.    Fifth Amendment Privilege Against Self-Incrimination**

    **a.    The Sakais' Blanket Assertion of the Fifth Amendment Privilege is Improper**

A Fifth Amendment privilege claim may be asserted if there are "substantial hazards of self-incrimination that are real and appreciable, not merely imaginary and substantial," that the information sought in an IRS summons might be used against the taxpayer to establish his or her criminal liability.  <u>Bright</u>, 596 F.3d at 691-92 (quoting <u>United States v. Drollinger</u>, 80 F.3d 389, 392 (9th Cir. 1996)).  The taxpayer must have "reasonable cause to apprehend [such] danger from a direct answer to questions posed to him." <u>Drollinger</u>, 80 F.3d at 392 (internal quotations and citations omitted).

The Ninth Circuit has held that "[a] proper application of this standard requires that the Fifth Amendment be raised in response to specific questions propounded by the investigating body." <u>Bright</u>, 596 F.3d at 691 (internal quotations and citations omitted).  The taxpayer must "present himself for questioning, and as to each question elect to raise or not to raise the defense.  The District Court may then determine by considering each question whether, in each instance, the claim of self-incrimination is well-founded." <u>Drollinger</u>, 80 F.3d at 392 (quoting <u>United States v. Bell</u>, 448 F.2d 40, 42 (9th Cir. 1971)).

14

See also <u>Edelson v. Comm'r of Internal Revenue</u>, 829 F.2d 828, 832 (9th Cir. 1987) ("A taxpayer cannot base his failure to either cooperate with the IRS or to produce records on a generalized fear of self-incrimination."). The privilege is not limited to oral questioning; the taxpayer may refuse to provide documents if the act of production would be testimonial. <u>Bright</u>, 596 F.3d at 691.

In the present case, Petitioner claims that the Sakais' blanket assertion of the Fifth Amendment privilege is improper. The Court agrees. With respect to documents, the Court is instructed by <u>United States v. Bright</u>, 596 F.3d 683, 691 (9th Cir. 2010). In <u>Bright</u>, the taxpayers claimed a Fifth Amendment privilege with respect to all documents specified in the IRS summonses. <u>Id.</u> The magistrate judge scheduled a hearing over a month after the government filed its enforcement petition and over a year after the IRS originally issued the summonses. <u>Id.</u> The Ninth Circuit held that the taxpayers were able to fully litigate their Fifth Amendment privilege in the enforcement proceeding. <u>Id.</u> The court reasoned that "[h]ad the [taxpayers] wished to narrow their privilege claim or provide targeted support concerning particular documents, they had the opportunity to produce a privilege log or turn over any contested documents for *in camera* review." <u>Id.</u> Thus, the court concluded that the taxpayers could not refuse to produce a privilege log or

documents for an *in camera* review in response to an order to show
cause and then protest an insufficient opportunity to present a
claim of privilege.  Id.

Similar to the taxpayers in Bright, the Sakais were
able to fully litigate their Fifth Amendment privilege in the
enforcement proceeding.  The Sakais were given more than two
months from the United States' filing of the Petition, and nearly
one year from the issuance of the IRS summonses, to produce a
privilege log or contested documents for an *in camera* review at
the show cause hearing.  Therefore, the Court finds that the
Sakais' blanket assertion of their Fifth Amendment privilege for
documents is improper and the IRS summonses should be enforced.
Since Respondents conveyed to the Court at the show cause hearing
that their counsel was in the process of drafting a privilege
log, however, the Court will give Respondents the opportunity to
produce a finalized privilege log along with the contested
documents to the Court for an *in camera* review.

The district court's treatment of a blanket assertion
of the Fifth Amendment privilege is different when claimed at a
taxpayer's interview, as opposed to a document production.  Id.
Because an unscripted interview is undefined, a court cannot make
a reasoned assessment of privilege before particular questions
have been posed.  Id.  In this situation, the Court is guided by
United States v. Drollinger, 80 F.3d 389, 393 (9th Cir. 1996), in

which the Ninth Circuit held that the required inquiry is "best made in an *in camera* proceeding, where the defendant is given the opportunity to substantiate his claims of privilege and the district court is able to consider the questions asked." <u>Id.</u> (quoting <u>United States v. Argomaniz</u>, 925 F.2d 1349, 1355 (11th Cir. 1991)). <u>See also</u> <u>United States v. Roundtree</u>, 420 F.2d 845, 852 (5th Cir. 1969) ("The district court may then determine by reviewing [the taxpayer's] records and by considering each question whether, in each instance, the claim of self-incrimination is well-founded."). As a result, the Court finds that an *in camera* hearing is necessary to determine whether the Sakais' claims of self-incrimination are well-founded as to each specific question posed by the IRS.

> **b.    Strategic Medical Must Produce Corporate Documents in its Possession, But its President Need Not Further Testify About the Documents' Whereabouts**

It is well settled that a corporate custodian may not resist a subpoena for corporate records on Fifth Amendment grounds. <u>Braswell v. United States</u>, 487 U.S. 99, 108-09 (1988); <u>United States v. Blackman</u>, 72 F.3d 1418, 1427 (9th Cir. 1995) (italics in original) (holding that the Fifth Amendment does not preclude enforcement of IRS summons because "[a] corporate custodian cannot claim a Fifth Amendment privilege with regard to corporate records, even if the records *or the act of producing them* might incriminate him personally"). Respondents argue,

however, that Allen Sakai President should not be required to give any further oral testimony regarding the whereabouts of Strategic Medical's documents under <u>Curcio v. United States</u>, 354 U.S. 118 (1957). <u>See also</u> <u>United States v. Rylander</u>, 460 U.S. 752, 760 (1983) (applying <u>Curcio</u> privilege to enforcement of IRS summons).

In <u>Curcio</u>, the petitioner, in his capacity as secretary-treasurer of a local union which was under investigation, was served with subpoenas to produce union books and testify. <u>Id.</u> at 119. The petitioner appeared before the grand jury, stated that the books were not in his possession, and refused to answer any questions as to their whereabouts on the ground of self-incrimination. <u>Id.</u> The petitioner was held in contempt, but the U.S. Supreme Court reversed, holding that a corporate custodian need not orally testify as to the whereabouts of nonproduced records. <u>Id.</u> at 128.

Just as the petitioner did in <u>Curcio</u>, Allen Sakai President testified that the Strategic Medical's records were not in his possession and also provided the IRS with an invoice from a shredding company to Allen Sakai's former law firm indicating that the requested documents had been destroyed. <u>See</u> Exh. C to Petition at 37:4-38:20. Given these facts, the Court finds that <u>Curcio</u> applies such that Allen Sakai President is not required to orally testify as to the whereabouts of Strategic Medical's

records.  However, Petitioner is not precluded from requiring

Allen Sakai President to authenticate any documents – should they

be subsequently located – produced by Strategic Medical.  See

Blackman, 72 F.3d at 1426 (quoting Braswell, 487 U.S. at 114)

("Requiring the custodian to identify or authenticate the

documents for admission in evidence merely makes explicit what is

implicit in the production itself.").

## 2.    Attorney-Client Privilege

The attorney-client privilege protects confidential

communications between attorneys and clients which are made for

the purpose of giving legal advice.  United States v. Richey, 632

F.3d 559, 566 (9th Cir. 2011).  An eight-part test determines

whether information is covered by the attorney-client privilege:

> (1) [ ] legal advice of any kind is sought (2)
> from a professional legal adviser in his
> capacity as such, (3) the communications
> relating to that purpose, (4) made in
> confidence (5) by the client, (6) are at his
> instance permanently protected (7) from
> disclosure by himself or by the legal adviser,
> (8) unless the protection be waived.

Id. (quoting United States v. Graf, 610 F.3d 1148, 1156 (9th Cir.

2010)).  Voluntary disclosure of privileged communications

results in a waiver of the privilege for all other communications

concerning the same subject.  Id.  The attorney-client privilege

may extend to communications with third parties who have been

engaged to assist the attorney in providing legal advice, but if

the advice sought is not legal advice, e.g., accounting advice

from an accountant, the privilege does not exist.  Id.

Here, Respondents contend that Lai's testimony and documents regarding the Sakais should be privileged because he was hired by their legal counsel to assist counsel in providing legal advice to the Sakais.  In addition, Respondents claim that, as a CPA, Lai's communications in giving "tax advice" are specifically protected under 26 U.S.C. § 7525(a)(1), which protects those communications that would have been privileged if made between a taxpayer and an attorney.[5]

However, Lai did not make a specific proffer of what communications, if any, are subject to the attorney-client privilege, choosing instead to assert a blanket privilege.  But, "[a] party claiming the privilege must identify specific communications and grounds supporting the privilege as to each piece of evidence over which the privilege is asserted." United States v. Martin, 278 F.3d 988, 1000 (9th Cir. 2002).  Further, to the extent Lai's files contain documents that were not communications, they are not protected by the attorney-client privilege. Richey, 632 F.3d at 567.  Indeed, it would be "clear error" for the court to conclude that Lai's entire work file is

---

[5]  26 U.S.C. § 7525(a)(1) provides, "With respect to tax advice, the same common law protections of confidentiality which apply to a communication between a taxpayer and an attorney shall also apply to a communication between a taxpayer and a federally authorized tax practitioner to the extent the communication would be considered a privileged communication if it were between a taxpayer and an attorney.

protected by the attorney-client privilege.  <u>See id.</u>  Finally,
the tax practitioner privilege contained in 26 U.S.C. §
7525(a)(1) does not shield Lai, as the statute expressly states
that it is subject to all of the limitations placed upon the
attorney-client privilege by the common law.  Therefore, the
Court finds that Lai is obligated to appear before the IRS and
testify about and produce the non-privileged documents contained
in his work file as commanded by the summons.

### 3. Work Product Doctrine

The work product doctrine protects "from discovery
documents and tangible things prepared by a party or his
representative in anticipation of litigation." <u>Richey</u>, 632 F.3d
at 567.  The doctrine covers documents or the compilation of
materials prepared by agents of the attorney in preparation for
litigation and its protections are waivable.  <u>Id.</u>  Where a
document serves a dual purpose, i.e., it was not prepared
exclusively for litigation, the "because of" test is used.  <u>Id.</u>
at 568.  Dual purpose documents are prepared because of
litigation if "in light of the nature of the document and factual
situation in the particular case, the document can be fairly said
to have been prepared or obtained because of the prospect of
litigation."  <u>Id.</u> (quoting <u>In re Grand Jury Subpoena (Mark
Torf/Torf Envtl. Mgmt.)</u>, 357 F.3d 900, 907 (9th Cir. 2004)).  In
applying the "because of" standard, courts must consider the

totality of the circumstances and determine whether the "document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation." Id. (quoting Torf, 357 F.3d at 908).

In this case, Respondents contend that Lai's work product is protected because it was prepared in anticipation of litigation. However, the record indicates that Lai was hired, at least in part, to prepare amended federal income tax returns for the 2003 through 2005 taxable years on behalf of the Sakais. See Supplemental Declaration of Revenue Agent Debra N. Tsuha, dkt. no. 13, at ¶ 5. These amended returns were not prepared "because of" litigation – at the time they were filed, the IRS had not yet begun its audit – but rather, would have been created in substantially similar form regardless of the prospect of litigation. Consequently, the Court finds that Lai may not invoke the work product doctrine to protect the contents of his work file, as they pertain to the amended tax returns.

## C.  Costs

Petitioner also seeks to recover its costs incurred in maintaining this action. See Petition at 6. A court may award costs to the government as the prevailing party in actions to enforce IRS summonses pursuant to Rule 54(d)(1) of the Federal Rules of Civil Procedure ("FRCP"). See United States v. Garcia, 287 F. Supp. 2d 1083, 1088 (N.D. Cal. 2003). FRCP 54(d)(1)

provides, "Unless a federal statute, these rules, or a court order provides otherwise, costs - other than attorney's fees - should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). When a petition to enforce an IRS summons is granted, the United States qualifies as a "prevailing party." <u>See</u> <u>United States v. Kis</u>, 658 F.2d 526, 544 n.56 (7th Cir. 1981); <u>Garcia</u>, 287 F. Supp. 2d at 1088. As there is no applicable exception to this rule in this case, to the extent these Findings and Recommendation are adopted by the District Judge and the Petition is granted, it is recommended that costs be awarded to Petitioner.[6]

## CONCLUSION

In accordance with the foregoing, the Court FINDS and RECOMMENDS that the United States' Petition to Enforce IRS Summons, filed April 5, 2011, be GRANTED IN PART AND DENIED IN PART as follows:

(1)    The IRS summonses issued on June 16, 2010 and

---

[6]    In <u>United States v. Manuia</u>, Civil No. 09-00115 JMS-LEK, 2009 WL 2828023, at *1 (D. Haw. July 14, 2009), the Magistrate Judge held that the United States' request for taxable costs pursuant to FRCP 54(d)(1) was premature "because the prevailing party has not been determined yet." As this opinion was a similarly a Findings and Recommendation to grant the United States' petition to enforce an IRS summons, the Court agrees that it would have been premature for costs to be awarded outright. However, to the extent that the instant Findings and Recommendation is adopted and the Petition is granted, the Court finds that, at such point, the United States would qualify as a "prevailing party" entitled to costs. <u>See, e.g.</u>, <u>Garcia</u>, 287 F. Supp. 2d at 1088 (cited by <u>Manuia</u>, at 2009 WL 2828023, at *1).

June 24, 2010 shall be enforced;

(2) Respondents shall produce the non-privileged documents requested in the summonses to Petitioner;

(3) Respondents shall produce a detailed privilege log to Petitioner and the Court, which specifically identifies the privileged documents, the privilege asserted, and the basis for asserting the privilege on or before June 28, 2011;

(4) On or before the same date, Respondents shall produce to the Court the privileged documents for an *in camera* review of the appropriateness of the privileges claimed;

(5) On July 5, 2011 at 10:30 a.m., Respondents shall appear and give testimony before IRS Revenue Agent Tsuha, or any other proper officer employee of the IRS, at an *in camera* hearing where the Court will determine the applicability of any privileges asserted;[7]

(6) Should Respondents fail to abide by the Court's order, Petitioner may move for contempt sanctions; and

(7) Petitioner's request for costs shall be granted, provided that Petitioner submits a bill of costs within seventeen (17) days of the filing of this Findings and Recommendation to determine appropriate costs.

---

[7] It should be noted that at the show cause hearing on the instant Petition, counsel for both Petitioner and Respondent stated that they had no objections to proceeding with the production of a privilege log and contested documents as well as with the *in camera* hearing in the manner described.

IT IS SO FOUND AND RECOMMENDED.

DATED AT HONOLULU, HAWAII, JUNE 7, 2011



_____
Richard L. Puglisi
United States Magistrate Judge

USA V. SAKAI; CIVIL NO. 11-00217 LEK-RLP; FINDINGS AND
RECOMMENDATION TO GRANT IN PART AND DENY IN PART THE UNITED
STATES' PETITION TO ENFORCE IRS SUMMONSES